## GYPSY OIL CO. v. ESCOE.

No. 16111. Opinion Filed March 22, 1927.

Rehearing Denied June 14, 1927.

(Syllabus.)

1. **Indians—Minors—Lease of Allotment—Assignment—Approval by Secretary of the Interior Made Necessary by Contract.**

The passage of the Act of Congress of April 26, 1906 (34 U. S. Stats., p. 137, chap. 1876), providing that leases of allotments of the minors in the Five Civilized Tribes are not subject to the approval or disapproval of the Secretary of the Interior, but the orders of the court approving them are final, renders the approval of the Secretary of the Interior to such contracts executed after the passage thereof unnecessary, but where such contracts are entered into providing for such approval, such provisions may be enforced by the lessor as a condition precedent where an attempted assignment of such lease has been made.

2. **Same—Contracts—Conditions Precedent and Subsequent.**

A condition precedent is one that must be performed before the estate can be vested or be enlarged, while a condition subsequent operates upon estates already created and vested and renders them liable to be defeated.

3. **Same.**

In determining whether a provision in a contract is a condition precedent or a condition subsequent, all the provisions and conditions of the contract must be read and interpreted together so as to give force and vitality to each provision thereof and correctly interpret the intention of the parties to the contract, if possible, but in doing so, if the language used is plain and unambiguous, it will be given its usual and ordinary meaning.

Error from District Court. Creek County; Fred A. Speakman, Judge.

Action by Leo Bennett Escoe, a minor, by O. W. Stephens, guardian, against the Gypsy Oil Company, a corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

James B. Diggs, William C. Liedtke, Redmond S Cole, and C. L. Billings, for plaintiff in error.

Creekmore Wallace, Wallace & Field, and Blakeney & Ambrister, for defendant in error.

PHELPS, J. The defendant in error, Leo Bennett Escoe, was a minor Creek Indian of one-eighth degree of Indian blood, and there was allotted to him as a part of his surplus allotment the lands located in Creek

county, a part of which constitutes the subject-matter of this controversy.

On May. 15, 1906, his duly appointed guardian executed to the New York Oil Company an oil and gas mining lease on the regular departmental form for a term of 15 years, which lease was duly approved by both the United States Court for the Western District of the Indian Territory and the Secretary of the Interior.

The lease contract contained the following clause:

"And it is mutually understood and agreed that no sublease, assignment, or transfer of this lease or of any interest therein or thereunder can be directly or indirectly made without the written consent thereto of the lessor and the Secretary of the Interior first obtained, and that any such assignment or transfer made or attempted to be made without such consent shall be void."

On December 18, 1909, this lease was assigned by the New York Oil Company to the Gipsy Oil Company, plaintiff in error here. The guardian of the minor, as shown at page 139 of the case-made, consented to the assignment of the lease by the execution of an instrument, in full as follows:

"Consent of Guardian.

"I, Charles J. Escoe, guardian of Leo Bennett Escoe, a minor, hereby consent that the New York Oil Company may transfer and assign an oil and gas mining lease, dated May 15, 1906, and approved by Jessee E. Wilson, Asst. Secretary of the Interior. November 1, 1906, to the Gypsy Oil Company; in so far as a said lease covers or affects the east half of the southwest quarter of the southeast quarter, and the east half of the west half of southwest quarter of southeast quarter. all in section 8, township 17 north, range 12 east, and containing 30 acres more or less.

"Charles J. Escoe, Guardian."

The execution and delivery of this instrument seems to be the only effort made to comply with the above-quoted provision of the lease. The lands covered by the lease produced oil and gas.

On January 13, 1914, the guardian of said minor, with the approval of the county court, executed to the Gypsy Oil Company a contract selling to it the casing-head gas produced from the premises. On October 17, 1916, before the expiration of the lease by its terms on May 15, 1921, the guardian of said minor, through the county court, sold to the Gypsy Oil Company a lease covering these lands for the sum of $2,250, said lease beginning at the expiration of the

original lease and continuing as long as oil or gas in paying quantities is produced thereon. The royalties from the production were paid to the guardian for the benefit of the minor.

On April 12, 1923, the minor, through his guardian, filed suit in the district court of Creek county, praying for judgment and decree canceling the lease covering the lands in question, and for accounting. Before the trial of the cause, however, the minor attained his majority and continued the prosecution of his claim, resulting in a judgment in his behalf canceling the instruments in question and for a money judgment on accounting of $64,175, to reverse which this appeal is prosecuted.

The trial court held that the assignment of the lease by the New York Oil Company to the Gypsy Oil Company was void and ineffectual to transfer or convey any interest in the lease, for the reason that the assignment was without the approval of the Secretary of the Interior and the county court having jurisdiction of the minor's estate.

It is first contended by plaintiff in error that the court erred in holding the lease void, contending that the lease in question was at no time subject to departmental supervision and control and that the conditions contained therein requiring its approval by the Secretary of the Interior and the consent of the Secretary of the Interior to any assignment thereof were void ab initio, citing section 20 of the Act of Congres approved April 26, 1906, the pertinent part of which reads as follows:

"* * * Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court. * * *"

Supporting this contention counsel cite Morrison v. Burnette, 154 Fed. 617, and in their brief say:

"* * * Leases of allotments of Indian minors approved by trial courts of the Indian Territory after April 26. 1906, were not subject to the approval or disapproval of the Secretary of the Interior and that the United States States courts for the Indian Territory had full and complete jurisdiction to sell and approve leases of this character."

They also cite Cowles v. Lee, 35 Okla. 159, 128 Pac. 688, in which this court said:

"The restrictions against alienation having been removed from said minor's allotment by virtue of the Act of April 26. 1906 (34 U. S. Stat., p. 137, c. 1876), after said date leases of allotments of minors in the Five Civilized Tribes, approved by the trial courts in that jurisdiction, are not subject

to the approval or disapproval of the Secretary of the Interior; but the orders of the court approving them are final." (Citing authorities.)

They also cite Wellsville Oil Co. v. Miller, 44 Okla. 492, 145 Pac. 344 (again reported in 48 Okla. 386, 150 Pac. 186), which case was finally decided by the United States Supreme Court, 61 L. Ed. 559.

We have carefully examined these authorities, and, in our judgment, they do not support plaintiff in error's contention. They do hold, and we take it the law therein announced is well settled. that after the passage and approval of the Act of April 26, 1906. the execution or assignment of leases such as was involved in the instant case did not require the approval of the Secretary of the Interior to make them valid. However, in the authorities above cited the question involved was not whether the provision in the contract requiring the approval of the Secretary of the Interior was a valid contractual requirement, but the question involved was whether such requirement was necessary to make the lease valid and binding.

As we see it, the provision in the lease in question requiring the written consent of the Secretary of the Interior to the assignment of any interest therein was a provision well within the authority of the county court and the interested parties to make and, though not required by law, the provision having been inserted in the lease, it is binding as a condition precedent to a valid assignment of the same.

There is another provision in the original lease contract reading as follows:

"And the said party of the second part expressly agrees that should it or its sublessees. heirs, executors, administrators. successors or assigns violate any of the covenants, stipulations or provisions of this lease or fail for the period of sixty (60) days to pay the stipulated monthly royalty provided for herein, then the party of the first part **shall be at liberty in his discretion, to avoid this indenture of lease and cause the same to be annulled** when all the rights, franchises and privileges of the second party, its sublessees, heirs, executors. administrators, successors or assigns, thereunder shall cease and end without further proceedings."

It is contended by plaintiff in error that, in view of this clause in the contract, the clause providing that the contract shall be void if any attempt is made to assign any interest in the same without the consent of the lessor and the Secretary of the Interior

merely becomes a condition subsequent and that the lessor's remedy is defined and measured by the provision of the contract last above quoted, while it is contended by the defendant in error that the provision of the contract declaring it void where an effort is made to assign any interest therein without the written consent of the lessor and the Secretary of the Interior is a condition precedent, and that the attempted assignment was void and conveyed no interest therein whatever.

The distinction between a condition precedent and a condition subsequent is defined by this court in the second and third paragraphs of the syllabus in Fraley v. Wilkinson, 79 Okla. 21. 191 Pac. 156, as follows:

"A 'condition precedent' is one that must be performed before the estate can be vested or be enlarged.

"A 'condition subsequent' operates upon estates already created and vested, and renders them liable to be defeated."

According to the weight of authorities, where there is doubt as to whether a condition is "precedent"or "subsequent," as a rule, courts will place that interpretation upon the contract rendering the performance a condition subsequent, and if doubt exists as to a provision in a lease or deed being a covenant or a condition, they will be construed as a simple covenant rather than a condition. but where this contract plainly, specifically, and without ambiguity provides that it shall be void if any assignment or transfer is made or attempted to be made without the written consent of the lessor and the Secretary of the Interior, we are unable to follow the reasoning of counsel for plaintiff in error that this provision of the contract can be construed as a condition subsequent without doing positive violence to the plain and simple meaning of the language used.

Counsel for plaintiff in error, in their briefs and argument supporting their contention that the language used in the contract under consideration should be construed as conditions subsequent, or, in other words, that the contract was not void but merely voidable at the option of the lessor in case he saw fit to void its terms because of a breach of the provisions thereof. favor us with voluminous citations of authorities supporting their position. a fair sample of which is Capps v. Hensley, 23 Okla. 311, 100 Pac. 515, the fourth paragraph of the syllabus of which reads as follows:

"The words 'void' and 'voidable' are often

loosely used, and much confusion has resulted therefrom. 'Void' is so frequently employed in the sense of 'voidable' as to have lost its primary significance; and, when it is found in a statute, judicial opinion, or a contract, it is generally necessary to resort to the subject-matter or context to determine precisely the meaning given to the word."

This and other authorities cited, no doubt, lay down the correct rule, but a rule which is not applicable in this case unless we exert an effort to place a construction upon the contract under consideration which, in our judgment, was never contemplated by the parties and which is not justified by the language used.

Having reached the conclusion that the assignment under which plaintiff in error claims was void, it necessarily follows that the casing-head gas contract of January 13, 1914, based upon the assumption that plaintiff in error had a valid lease covering the property, must also fall; also, under the rule laid down in Carlile v. National Oil & Development Co., 83 Okla. 217, 201 Pac. 377, the purported extension agreement must be declared invalid.

It appears from the record that after the trial court had reached the conclusion that the contract under which plaintiff in error was occupying and operating the property in question was void, the court then set the cause down for accounting between the parties and upon such accounting gave plaintiff in error credit for the amount paid out in developing the property, the amount paid in royalties, and the amount paid for the extention agreement, and, after allowing such credits, then, in addition to quieting title to the real estate covered by the contract, rendered judgment in favor of defendant in error in the sum of $64,175 and costs, which judgment, we are convinced, is amply sustained by the law and evidence, and is, therefore, in all things affirmed.

BRANSON, C. J., and HARRISON. LESTER, and CLARK. JJ., concur. HUNT, RILEY, and HEFNER. JJ, dissent.

Note.—See under (1) 31 C J. pp. 521, 522, §93. (2) 21 C. J. p. 929, §38; p. 930, §39. (3) 13 C. J. p. 525. §§485, 486; p. 527, §486; p 531, §489; p. 564, §531; p. 565, §532; p. 567, §533.